CONSOLIDATED LOOPS CO. v. BARNUM & BAILEY, Limited.

(Circuit Court, S. D. New York. June 5, 1908. On Rehearing, June 12, 1908).

PATENTS—INVENTION—AMUSEMENT APPARATUS.

The Eggers patent, No. 767,375, for an amusement apparatus comprising an inclined track adapted to be traversed by a vehicle, an upwardly inclined ledge at the bottom, a gap, and means for arresting the flight of the vehicle after it has passed the gap, is void for lack of patentable invention, in view of the prior art.

In Equity. Suit to restrain alleged infringement of United States letters patent No. 737,375, dated August 25, 1903, to Calvin C. Eggers, assignor to Arthur T. Prescott, for amusement apparatus, and for an accounting.

O. Ellery Edwards, Jr., for complainant.
Holmes & Rogers, for defendant.

RAY, District Judge. All the claims of the patent to Prescott, assignee of Calvin C. Eggers, No. 737,375, granted August 25, 1903, application filed March 25, 1903, for an amusement apparatus, are in issue except the first and last, narrowest and broadest. Claims 2, 3, 8, and 9 are sufficiently illustrative. They read as follows:

"2. An amusement apparatus, comprising an elevated track structure embodying therein a downward incline, a starting-platform at the top of said incline, means whereby access is had to said platform and a ledge extending at an obtuse angle from the lowest point of said incline adapted to be traversed by a vehicle or conveyance, and means for arresting the flight of a vehicle or conveyance after it has left said ledge; a gap being left between said ledge and said arresting means.

"3. An amusement apparatus, comprising an elevated track structure embodying therein a downward incline, a ledge extending at an obtuse angle from the lowest point thereof and an upwardly-inclined lip on said ledge adapted to be traversed by a vehicle or conveyance, and means for arresting the flight of a vehicle or conveyance after it has left said lip; a gap being left between said lip and said arresting means. * * *

"8. An amusement apparatus, comprising a portable elevated track structure embodying therein a downward incline and a ledge extending at an obtuse angle from the lowest point thereof adapted to be traversed by a vehicle or conveyance, and means for arresting the flight of a vehicle or conveyance after it has left said ledge; a gap being left between said ledge and said arresting means.

"9. An amusement apparatus, comprising a portable elevated track structure consisting of a downward incline composed of a plurality of separable abutting sections, supports therefor and means for securing said sections to said supports, and a ledge extending at an obtuse angle from the lowest point of the lowest section of said incline adapted to be traversed by a vehicle or conveyance, and means for arresting the flight of a vehicle or conveyance after it has left said ledge; a gap being left between said ledge and said arresting means."

It will be observed that we have the following elements in combination, forming an elevated track structure and which embodies: (1) A downward incline, which may be made of metal or wood or any suitable material; (2) a starting-platform at the top of said incline; (3) means whereby access is had to said platform; (4) a ledge extending upward at an obtuse angle from the lowest point of said incline adapted to be traversed by a vehicle or conveyance; (5) means for arresting the flight of the vehicle or conveyance after it has left the ledge; and (6) a gap left between the ledge and said arresting means. Claims 8 and 9 differ, in that the apparatus is portable; that is, constructed in sections, so as to be taken apart and down and transported conveniently, and then erected again by placing the sections in position. No novelty is suggested in the mode or manner of constructing the sections or holding them in position.

We have a sort of tower for the upper end of the incline to rest upon, or against, and means, such as a ladder or steps, to reach its

platform or top; then the incline and its supports; then the upwardly-inclined ledge at the lower end of the incline, which incline is elevated from the ground. This is all there is to this part of the structure, and it presents no novel feature whatever. Then comes the open space. Then the means for arresting the flight of the vehicle or conveyance after it has left the incline and ledge. So far as the language of the claims is concerned these arresting means may be a stone wall to strike upon or against, an upright structure of planks or cushions to strike against, or a platform or cushion to strike upon. Either sort of structure would arrest the downward "flight," but only the upright structure would arrest the forward flight of the performer. The idea is that a person with some sort of easily running vehicle, such as a bicycle, mounts to the top of the platform and then mounts his vehicle and moves down the incline with great and increasing velocity until his vehicle reaches the upwardly-inclined ledge forming a part of such incline. The speed—that is, the momentum gained—carries the vehicle up this ledge, and vehicle and rider pass diagonally upward and onward through space over the gap. Momentum is now gradually lost, and the law of gravitation brings them downward, and, if there were no artificial means for arresting this downward flight, both vehicle and rider would go to the ground and the concussion would break the vehicle, and perhaps the neck or back of the rider, or do him other injury. Hence an obstacle, "arresting means," are provided, which, as shown, consist of a platform on the far side of the open space or gap, but little lower than the lowest end of the incline. It is a straight road down the side of an artificial hill, with an elevated ridge in the road and a ditch on the other side thereof over which the rapidly moving vehicle or conveyance passes before it rejoins mother earth. Cover the road with frozen and packed snow, or with ice, use a sled as the conveyance, slide down, strike the ridge, surmount it on the up curve. and pass on through the air until gravitation brings sled and rider to the road again. The length of the jump or flight through the air will depend on the speed of the conveyance when it strikes the ridge.

In view of our common knowledge of the laws of dynamics and gravitation, I can see no novelty amounting to patentable invention in this structure. The idea of a gap for rider and conveyance to jump over is suggested by every ditch and ravine and fissure in the earth, and by the prior art as published and well known. The idea of an elevated platform to strike upon is suggested by common knowledge and common sense. The sight of a rapidly moving bicycle or conveyance with a rider passing the open space is somewhat spectacular, but not new. So the sight of a man jumping a gulley or fissure in the earth, etc., is spectacular. But such inclines were old; such towers were old; mere spaces or openings between one platform or object and another were old, whether left unoccupied or filled with animals. Any carpenter would have provided everything, except the conveyance and a rider daring enough to take the flight and skillful enough to keep right side up. But these are not elements of this combination. So placing animals or other objects in the gap, or open space, adds per-

haps to the spectacular effect. But this was old, as shown and conceded by the complainant. The defendant has introduced in evidence the very old tower, with elevated downward incline leading therefrom, the lip or ledge, consisting of a springboard, the opening or gap, in which is placed animals, and arresting means beyond for arresting or breaking the flight of the performer. See "Defendant's Exhibit M," showing complainant's apparatus and the old circus apparatus and act, with which we all have been familiar since boyhood. In "the old circus act" illustration, the arresting means consist of a cushion for the performer to light upon after completing his flight or jump over the animals and across the open space. A platform would do as well, except it would lessen the spectacular effect.

Substitute a man on a bicycle, or in a small automobile, and we have substantially the same apparatus and performance. In "the old circus act" the performers ran down the incline, struck the springboard, and by the momentum and spring were carried upward and forward over the space to the landing place. In the Scientific American Supplements of April 21, 1900, and April 20, 1895, Complainant's Exhibit 6 and Defendant's Exhibit G, we have illustrations of "Ski" or "Skee" racing and jumping. Here we have a steep decline, or side hill road, with a springboard obstruction at some convenient point. The performer goes to the top of the hill, mounts his "skees" or conveyance, comes rapidly down, partly by his own exertions and partly by gravity, strikes the springboard, which is inclined upwardly, and is carried and thrown upward and onward, coming to the ground at a distance beyond the obstruction or springboard. Would it constitute invention to construct an elevated downward incline indoors, and leave a space or gap just beyond the springboard, and provide a landing place beyond, down which the "skee jumper" might continue his course to the ground? This is all that defendant has done. In patents to Idlar, No. 548,256, October 22, 1895, "pleasure lake and slide course and conveyer therefor," we have these track structures elevated above the ground "by suitable means" and down which the conveyance or vehicle goes. carried by gravity. The track may be curved, straight, or undulating. If undulating, the conveyance takes to the water at the lowest end of the structure by a skip motion or "skip action"; that is, it is carried upward and forward, so as to ride upon, instead of plunging into, the water. Idlar says:

"Through which undulating chute the boat or car is precipitated by gravity into and over the body of water or artificial lake, B, by a skip action, without wetting those participating in the sport."

This up curve at the lower end of the runway or downward incline. is not old. We have it in fire escape chutes for people to slide down in. O'Brien shows and describes it. U. S. letters patent, No. 139,416, of May 27, 1873. I fail to find in this structure of the patent in suit any patentable novelty, any new idea or conception, aside from the particular use to which it was put; that is, it was designed for a bicycle and its rider, or other similar conveyance, and was the adaptation of the old art, with such necessary modifications as would occur to the ordinary mechanic, to that particular use. I do not discover any

such great utility or benefit to mankind in this structure as to call for the violation of the rule, declared by the Supreme Court of the United States in many cases, that there must be a mental conception, invention—not merely an old structure adapted to a new use. If the old structure is adapted, with necessary changes, to meet a new and novel exigency, and such adaptation demands more than ordinary mechanical skill, there may be and is invention. But such is not this case. What was wanted was a bicycle rider brave and daring and skilled enough to jump the open space. The downward incline, with the platform at the top, with steps for gaining access thereto, and the ledge extending at an obtuse angle from the lowest point of said incline, are not a patentable combination, and such a structure is not patentable. Nor is the platform for arresting the fall of the vehicle and rider. And to leave a gap between the one and the other for the performer to jump over did not make the alleged inventor a bold and daring inventor. Such gaps and ravines have existed since the world was formed and rent and broken by its internal heat.

There will be a decree dismissing the bill, with costs.

## On Rehearing.

The solicitor for the complainant files petition for a rehearing, asserting that claims 1 and 10 were in issue, but that no decision was rendered as to those claims, and that no decision was rendered on the motion to strike out. As the motion to strike out was decided on the argument, and denied, the court did not regard it necessary to refer to the matter in the opinion. The motion to strike out is denied.

As to claims 1 and 10 it was stated on the argument, and assented to, that claims 1 and 10 were not in issue on the final hearing, and I think it so appeared in the brief. However, as this court thoroughly examined all the claims, and was and is satisfied that claims 1 and 10 are invalid, disclosing no patentable invention in view of the prior art, the court now holds them invalid, and also holds that, conceding their validity, infringement is not shown.

There will be an order and a decree accordingly.